UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                   )
DENNIS R. WORTH,                   )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    Civil Action No. 02-1576  (RBW)
                                   )
ALPHONSO JACKSON,                  )
Secretary, United States Department of  )
Housing and Urban Development, et al.,  )
                                   )
            Defendants.            )
_____)
```

**MEMORANDUM OPINION**

      Currently before the Court are (1) the defendants' Motion to Dismiss and for Summary Judgment ("Defs.' Mot.") and their Memorandum in Support of Defendants' Motion to Dismiss, and for Summary Judgment ("Defs.' Mem."); (2) the plaintiff's Statement of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Pl.'s Opp'n"); and (3) the defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss and for Summary Judgment ("Defs.' Reply").[1]  For the reasons set forth below, this Court grants the defendants' motion.

---

[1] The motion which is the subject of this Memorandum Opinion became ripe on August 1, 2003.  However, before the Court had the opportunity to address it, the defendants filed a subsequent motion to dismiss on mootness grounds.  That motion, and a subsequent motion to dismiss on mootness grounds, were the subject of two prior memorandum opinions issued by this Court.  On March 7, 2005, the defendants filed a notice with the Court reinstating their earlier motion, which had been denied without prejudice on January 5, 2004.  A status conference was then held on April 8, 2005, during which the parties indicated that no further briefing regarding the earlier motion was necessary.  Accordingly, this Court will now resolves the earlier motion.

## I.  Background

The facts in this case have been exhaustively discussed in this Court's prior Memorandum Opinions and thus will only be reviewed here to the extent necessary to resolve the pending motion.  See Worth v. Jackson, Civ. Action No. 02-1576, slip op. at 1-4 (D.D.C. February 23, 2005) (hereinafter "Worth II"); Worth v. Jackson, Civ. Action No. 02-1576, slip op. at 2-6 (D.D.C. January 5, 2004) (hereinafter "Worth I").  The plaintiff, Dennis Worth, is a white male employed at the Department of Housing and Urban Development ("HUD") in St. Louis, Missouri.  He brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000), and the Fifth Amendment to the United States Constitution to challenge "affirmative employment plans ["AEPs"] that [allegedly] discriminate on the basis of race, ethnicity, and gender . . . ."  Second Amended Complaint ("Compl.") ¶ 1.  In addition, the plaintiff also challenges HUD's practice of "provid[ing] employment goals, target deadlines, managerial appraisals and incentives only for alleged 'underrepresented' racial minorities and women, and not for whites or males, even when whites or males are 'underrepresented' in a job category."  Compl. ¶ 19.

Essentially, the plaintiff's challenges can be divided into two distinct categories.  First, many of the allegations contained in the second amended complaint were based upon affirmative action plans that were implemented by HUD in accordance with the Equal Employment Opportunity Commissions's ("EEOC") Management Directive 714 ("MD-714").[2]  See, e.g.,

---

[2] MD-714 obligates all federal departments and agencies to create an "affirmative employment plan for minorities and women," which was required to identify alleged instances of "manifest imbalance" and "conspicuous absence" of women and racial minorities, by gender and race, and establish "goals" and "target dates" to eliminate such alleged underrepresentation at all organizational levels.  Compl. ¶ 10.

Compl. ¶¶ 10-14. Second, the plaintiff challenges HUD's "general hiring and promotions practices." Worth II, slip op. at 9.

On October 1, 2003, MD-714 was superceded by the adoption of MD-715. Id. at 4. Accordingly, the defendants filed a motion to dismiss the plaintiff's first amended complaint, arguing that the case had become moot as a result of the adoption of MD-715. See Defendants' Supplemental Motion to Dismiss the First Amended Complaint. On January 5, 2004, this Court granted in part and denied in part the defendants' motion, concluding that the plaintiff had standing to challenge the defendants' alleged discriminatory policies because the plaintiff had allegedly suffered an injury as a result of the defendants' preferential treatment of minorities, Worth I, slip op. at 12, but that the plaintiff's claims that challenged MD-714 and HUD's AEP were indeed moot because MD-715 explicitly superceded those policies and thus those claims were dismissed.³ Id. However, based upon the record before it, the Court was unable to determine if the plaintiff's allegations of discrimination based on HUD's general hiring, promotion, transfer and retention policies had also been rendered moot by the adoption of MD-715. Id. at 12-13. Thus, the Court permitted the parties to conduct limited discovery on the issue of whether the plaintiff's challenge to these other policies had also been rendered moot by the adoption of MD-715. Id. Following the completion of this discovery, the defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and for summary judgment pursuant to Rule 56(c). Worth II, slip. op at 4.

With respect to this second motion, on February 23, 2005, this Court granted the

---

³ Additionally, on January 5, 2004, this Court granted the plaintiff's motion to file a second amended complaint. The Court concluded that because the amendment made only a minor change to ¶ 28 of the complaint, and did not alter the substance of the plaintiff's allegations, the defendants would not be prejudiced and thus the amendment was permitted. Worth I, slip op. at 13.

defendants' motion to dismiss those claims of discrimination predicated upon the Troy Memorandum[4] and those claims of discrimination pertaining to underrepresentation analyses, multi-year plans, AEP's and goals and targets to remedy underrepresented minorities and women to the extent that these practices had ended following the adoption of MD-715. See Worth II, slip op. at 9-15. At the same time, this Court denied the defendants' motion as to the plaintiff's remaining claims of discrimination because there was some evidence in the record indicating that some of HUD's hiring and promotion policies were not implemented pursuant to MD-714 and may in fact be predicated on independent grounds. Id. at 15-16. It is the merits of these claims that survived the defendants' mootness challenges that are the subject of this opinion.

### III.    Standards of Review

Under Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). In reviewing such a motion, this Court must accept as true all the factual allegations contained in the complaint. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Additionally, in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. See EEOC v. St. Francis

---

[4] The Troy Memorandum is an interpretative memorandum written in 1989 by the EEOC's Director of Program Operations, James H. Troy. See Worth II, slip op. at 4. In its February 23, 2005 opinion, this Court held that the Troy Memorandum did not interpret Title VII, but rather provided an interpretation of MD-714 and was therefore superceded by MD-715. Id. at 10. Accordingly, any claims based upon the Troy Memorandum were held to be moot and therefore were dismissed. See Worth II, slip op. at 9-10.

Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).

This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. Bayer v. United States Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992). However, the non-moving party cannot rely on "mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). Under Rule 56, "if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted. Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The party moving for summary judgment bears the burden of establishing the absence of evidence that supports the non-moving party's case. Id. In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## IV.  Legal Analysis

The defendants contend that each count of the plaintiff's complaint that remains alive are

deficient, and thus they are entitled to judgment in their favor. The Court will address each of the plaintiff's three counts separately.

**(A)     The Plaintiff's Fifth Amendment Claim**

In Count I of the second amended complaint, the plaintiff alleges that the defendants are violating the Due Process Clause of the Fifth Amendment by subjecting him to a system of preferential hiring and promotion. Compl. ¶ 35. The defendants posit that the plaintiff is precluded from brining a constitutional claim against them because Title VII is the exclusive vehicle for pursuing employment discrimination claims. See Def.'s Mem. at 5. Thus, the defendants opine that because the plaintiff has failed to state a claim upon which relief can be granted, Count I should be dismissed. Id. at 7. The defendants rely heavily on Brown v. Gen. Servs. Admin., 425 U.S. 820 (1976), as support for their argument. Id. at 8-10. In opposition, the plaintiff contends that Brown is inapplicable to cases seeking prospective, as opposed to retrospective, relief, and thus is inapposite. See Pl.'s Opp'n at 7. Moreover, the plaintiff avers that it is improper to interpret Title VII in a manner that would preclude the review of "unconstitutional conduct." Id. at 7.

In Brown, the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. at 835. Following an examination of the legislative history that preceded the adoption of Title VII, the Court noted that "congressional intent . . . was to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." Id. at 828-29. The Brown holding was predicated on the view that "[t]he balance, completeness, and structural integrity of

[Section] 717[5] [of Title VII is] inconsistent with the . . . contention that the judicial remedy afforded by [Section] 717(c) was designed merely to supplement other putative judicial relief." Id. at 832.  The District of Columbia Circuit has consistently employed the holding in Brown as the basis for dismissing claims of employment discrimination brought on grounds independent of Section 717.   For example, in Graham v. Ashcroft, 358 F.3d 931 (D.C. Cir. 2004), cert. denied, 125 S. Ct. 83 (2004), the Circuit Court affirmed the District Court's dismissal of the plaintiff's equal protection claim, holding that Title VII is the exclusive remedy for a federal employee claiming racial discrimination.  See also Williams v. Bentsen, 1993 WL 469110, at *1 (D.C. Cir. Nov. 5, 1993) (holding that Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment); Wagner v. Taylor, 836 F.2d 566, 576-77 n.76 (D.C. Cir. 1987) ("[F]ederal employees cannot assert additional or alternative discrimination claims predicated directly upon the Constitution, but must use Title VII as the sole means of litigating their grievances."); Kizas v. Webster, 707 F.2d 524, 543 (D.C. Cir. 1983) (holding that Title VII is the plaintiff's exclusive vehicle for bringing an employment discrimination claim); Torre v. Barry, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ("[A] federal employee who is covered by section 717 may not sue under. . . the Fifth Amendment.").

Additionally, in Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405 (D.C. Cir. 1985), the District of Columbia Circuit concluded that the district court properly dismissed the plaintiff's Fifth Amendment claim, explaining that allowing federal employees to recast their Title VII claims as constitutional claims would threaten the legislative policies

---

[5] Section 717(a) of Title VII provides that "[a]ll personnel actions affecting [federal] employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex or national origin."  42 U.S.C. § 2000e-16.

underlying Title VII.  Id. at 1415.  However, Ethnic Employees further concluded that Congress did not intend to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection.  Id. at 1416; see Gunning v. Runyon, 3 F. Supp. 2d 1423, 1431 (S.D. Fla. 1998) (permitting the plaintiff's First Amendment claim to proceed because his argument was a "free speech and not an employment discrimination claim" and is therefore not cognizable under Title VII).  It is therefore clear that an alleged constitutional violation, which is cognizable under Title VII, i.e., capable of being adjudicated by a Court, see Black's Law Dictionary 253 (7th ed. 1999), is not permissible and must be dismissed.  Here, the plaintiff's Fifth Amendment challenge is clearly cognizable under Title VII.  The plaintiff asserts, as support for his Fifth Amendment claim, that he and the class he seeks to represent have been subjected to discrimination  "on the basis of [their] race and gender."  Compl. ¶ 34.  Moreover, the plaintiff utilizes identical factual allegations to support both his Fifth Amendment and Title VII claims.  Compl. ¶¶ 15-27, 33, 37.  Clearly, Section 717(a) protects federal employees from the type of discrimination based on race and gender alleged by the plaintiff.  42 U.S.C. § 2000e-16.

      Despite the well established precedent on the subject, the plaintiff nonetheless opines that Title VII does not permit the type of prospective relief the plaintiff seeks — injunctive relief.  Pl.'s Opp'n at 7; Compl. ¶ 10.  The plaintiff's argument has no merit.  Prospective relief is often a remedy in Title VII cases.  For example, in Kizas v. Webster, 707 F.2d 524 (D.C. Cir. 1983), the plaintiffs, a class of white male FBI agents who alleged that an affirmative hiring program created preferences for women and minorities in violation of both Title VII and the Fifth Amendment, sought, in addition to other remedies, "an injunction preventing [defendant]

Webster 'from continuing his unlawful acts.'" Id. at 532.  Based on the holding in Brown, the Kizas court affirmed the district court's dismissal of the plaintiffs' constitutional claim because Title VII was the plaintiffs' exclusive vehicle for pursuing their employment discrimination claims.  Id. at 543; see also Ethnic Employees, 751 F.2d at 1413 (seeking an order directing the Library to recognize their organization); Fitzpatrick v. Bitzer, 390 F. Supp. 278, 290 (D.C. Conn. 1974), aff'd in part on other grounds, rev'd in part on other grounds, 519 F.2d 559 (2d Cir. 1975), aff'd in part on other grounds, rev'd in part on other grounds, 427 U.S. 445 (1976) (prospective injunction entered as remedy for violation of Title VII's prohibition against sex-based employment discrimination).  Because the plaintiff has a cognizable claim under Title VII, his Fifth Amendment claim must be dismissed.

**(B)     The Plaintiff's Title VII Claim**

In Count II of the plaintiff's second amended complaint, he alleges that HUD's hiring and retention policies violate Title VII.  Compl. ¶¶ 28, 37-40.  Specifically, the plaintiff asserts that the

> defendants' have violated Title VII, and will continue to violate Title VII if not enjoined, because they create and maintain impermissible race-conscious and gender-conscious programs and classifications. Accordingly, defendants have taken personnel actions in violation of Section 717(a)'s mandate that they be "free from any discrimination based on race, color, religion, sex or national origin."

Compl. ¶ 40.  Section 717(a) of Title VII provides that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  The breadth of Title VII's proscription makes it an appropriate legal tool for bringing class-action claims challenging allegedly discriminatory

employment practices.  See Bartelson v. Dean Witter & Co., 86 F.R.D. 657, 662 (E.D. Pa. 1980).

As the Bartelson court observed in a case in which the plaintiff sought class certification:

> [a] [p]laintiff's broad based attack on the employment practices of [her employer] presents a classic example of the across the board approach to Title VII suits, so termed because they allege a single or unified underlying policy or pattern of discrimination attributable to the defendant-employer and seek to rectify the various forms in which discrimination is manifested.

86 F.R.D. at 662; see also Ladele v. Consol. Rail Corp., 95 F.R.D. 198, 201 (E.D. Pa. 1982) ("[P]laintiff in a Title VII class action [may] challenge a wide range of employment practices alleged to result from a common policy or pattern of discrimination. . . .").

To make out a valid claim of discrimination under Title VII, the plaintiff must present direct evidence of discriminatory intent, or, in the absence of direct evidence, the plaintiff can rely on the burden shifting framework enunciated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Mitchell v. Baldrige, 759 F.2d 80, 84-85 (D.C. Cir. 1985) (applying McDonnell Douglas burden shifting framework to Title VII claims). Because the plaintiff presents no direct evidence of discriminatory intent, and instead relies on indirect evidence to establish his Title VII claim, the plaintiff must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To establish a prima facie case of discrimination under Title VII, "the plaintiff must establish that (1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  Russel v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  If the plaintiff fails to satisfy his burden of establishing a prima facie case, which is not onerous, see Tex. Dep't of

Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981), the Court's inquiry ends and the plaintiff's claim must be dismissed, see Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999); Lutes v. Goldin, 62 F. Supp. 2d 118, 136 (D.D.C. 1999).  Such is the case here.

As already noted, one component of a prima facie case of employment discrimination is that the plaintiff sustained an adverse employment action.  Here, the plaintiff identifies four specific incidents of discriminatory conduct, which he contends resulted in adverse employment actions.  Specifically, he alleges that "he [was] unable to compete on equal footing, regardless of race or gender, . . . for the position of Mulitfamily Project Manager in 1997; two Senior Project Manager Positions in 1998; and a Systems Analyst Position in 2002."  Compl. ¶ 25.  Clearly, non-selection for a position is the type of adverse employment action Title VII is designed to address.  See Williams v. Frank, 1991 WL 213220, at *1 (D.D.C.  Sept. 30, 1991) (concluding that the plaintiff's race discrimination claim based on the non-selection for a position was brought "in accordance with Title VII").

However, the plaintiff does not seek redress for these alleged acts of discrimination.  See Pl.'s Opp'n at 20-21, 24.  Rather, he opines that he can seek redress under Title VII for "ongoing discrimination."  Id. at 21.  A careful review of the pleadings demonstrates why the plaintiff is not relying on the four instances of alleged discrimination as support for his prima facie case of discrimination, as three of the four employment actions were filed untimely and the fourth was clearly not an adverse employment action.[6]  The plaintiff, by attempting to rely on "ongoing

---

[6] When a federal employee files a formal EEO complaint, that employee has 90 days from receiving notice of the the agency's final decision to file a civil action in federal district court if there is no appeal to the Equal Employment Opportunity Commission (hereinafter "EEOC"), or within 90 days of final EEOC action if the employee appeals the agency's final decision to the EEOC. See 42 U.S.C.§ 2000e-16(c), 2000e-5.  The plaintiff's 1997 and 1998 claims, all three which were dismissed by HUD, were not appealed by the plaintiff to the EEOC or to

(continued...)

discrimination" to support his Title VII claim is simply trying to make out an end-run around the very clear requirements of Title VII, as relying solely on alleged ongoing discrimination fails to satisfy the requirements of Title VII.

The District of Columbia Circuit has held that to determine whether an action is colorable under Title VII, a personnel action should be examined to determine whether it produced an "objectively tangible harm" which is "adverse in an absolute sense," Brown 199 F.3d at 457-58, thereby having an "immediate effect on employment." Russell, 257 F.3d at 818 (quoting Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1555 (D.C. Cir. 1997)). Because the plaintiff does not base his claim on the four above-mentioned discriminatory acts, but instead bases it on what he characterizes as ongoing discrimination, the plaintiff is unable to prove that he has suffered an adverse employment action as the claim is devoid of evidence of an "objective[] tangible harm." See Brown, 199 F.3d at 457. In other words, by failing to identify a specific adverse employment action as the basis for his Title VII claim, the plaintiff has failed to establish that something has occurred that had an immediate impact on his employment.

---

[6](...continued)
this court within the requisite 90 day deadline. See Compl. ¶ 25; Pl.'s Opp'n at 20-21. Instead, the plaintiff filed the instant complaint in this court well past the 90 day deadline. Accordingly, if the plaintiff relied on these allegations they would have to be dismissed as time barred. See Jones v. Ashcroft, 321 F. Supp. 2d 1, 10 (concluding that "individuals who fail to comply with [Title VII's] administrative deadlines will be denied a judicial audience"); see also Smith v. Henderson, 137 F. Supp. 2d 313, 317 (S.D.N.Y. 2001) (dismissing the plaintiff's complaint as untimely when it was filed more than 90 days after plaintiff received notice of final agency decision and did not appeal it to the EEOC.). In addition, the plaintiff's allegation that he was "unable to compete . . . on an equal footing" for "a Systems Analyst position in 2002 . . . in HUD's St. Louis office," Compl. ¶ 25, did not constitute an "adverse employment action." This is because the position no longer existed when the plaintiff expressed interest in the position. See Exhibit A, Pierce Declaration ¶ 7; Exhibit B, Patenaude Declaration ¶ 7-8; Exhibit 3 to Defendants' Motion to Dismiss and for Summary Judgment as to the Plaintiff's First Amended Complaint, Armstrong Declaration, Attachment A, Tab 8, EEO Counselor's Report, Attachment 1 (September 6, 2002 e-mail from Dennis Worth to Sandra Scott) (collectively demonstrating that the position sought by the plaintiff no longer existed); see also Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) ([T]o establish a prima facie case of discriminatory non-selection, the plaintiff must establish that "either someone . . . filled the position or the position remained vacant and the employer continued to seek applicants.") (citations omitted).

Accordingly, because the plaintiff fails to articulate a requisite adverse employment action concerning the alleged pattern of ongoing discrimination, this Court must dismiss the plaintiff's Title VII challenge, as he has failed to establish a <u>prima facie</u> case of discrimination.[7]

**(C)     The Plaintiff's Title VII "As Applied" Constitutional Claim**

The final count of the plaintiff's second amended complaint is entitled "Constitutionality of Title VII as Applied." Compl. ¶¶ 41-44. Essentially, the plaintiff alleges in this count that Title VII is unconstitutional if "the defendants' employment policies [are] found to violate the Constitution, but Title VII" forecloses his ability to maintain the unconstitutional challenge. Pl.'s Opp'n at 25. Thus, the plaintiff contends that he can challenge the constitutionality of Title VII as applied to him because it would permit the commission of unconstitutional employment practices that are prohibited by the Constitution. <u>Id.</u> The plaintiff advances this claim under the guise that if he is prohibited from challenging HUD's employment policies under both the Fifth Amendment and Title VII, then Title VII must be declared unconstitutional as applied to him. However, had the plaintiff initiated a timely Title VII claim based on any of the four adverse employment actions identified by the plaintiff, which he clearly had the opportunity to do, his Title VII claim could have been maintained. Therefore, the premise underlying this third count of the complaint is lacking, and thus has no merit. In other words, the plaintiff's self-inflicted

---

[7] It may seem illogical that this Court concluded that the plaintiff's Fifth Amendment claim must be dismissed because the plaintiff could state a cognizable Title VII claim, but then conclude that the plaintiff's Title VII claim must be dismissed as well. However, the Court is not saying that under no circumstances could the plaintiff establish a Title VII claim. Rather, had the plaintiff filed a timely challenge to any of the alleged actionable adverse employment actions, the plaintiff could have maintained a Title VII challenge to HUD's alleged discriminatory policies. However, the plaintiff failed to make a timely challenge to the alleged adverse employment actions and cannot now circumvent the limits of Title VII by pursuing a constitutional challenge. Thus, had the plaintiff timely acted on his rights, the Court would have reached a different conclusion on the sustainability of the plaintiff's Title VII claim. <u>See</u> Section IV. (C), <u>infra</u>.

predicament is hardly sufficient grounds for him to raise an "as applied" constitutional challenge to Title VII. This count must therefore be dismissed.

### V. Conclusion

As this Court can fathom no reason to depart from the well-established holding in Brown, the Court must dismiss the plaintiff's Fifth Amendment claim in count I. Furthermore, the plaintiff has failed to establish a prima facie case of discrimination as required by Title VII, thus the plaintiff's Title VII challenge must also be dismissed. Finally, the plaintiff's "as applied" constitutional challenge to Title VII will be dismissed because the factual predicate underlying the claim is lacking. For the foregoing reasons, this Court grants the defendants' motion to dismiss.

SO ORDERED this 19th day of July, 2005. [8]

REGGIE B. WALTON
United States District Judge

---

[8] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.